## UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:12-cv-07127 |
| NIKOLAI SIMON BATTOO; BC CAPITAL GROUP S.A.; BC CAPITAL GROUP INTERNATIONAL LIMITED a/k/a BC CAPITAL GROUP LIMITED a/k/a BC CAPITAL GROUP GLOBAL; AND BC CAPITAL GROUP HOLDINGS S.A., | ) ) ) ) ) ) ) | Hon. Edmond E. Chang |
| Defendants. | ) ) | |

### RECEIVER'S MOTION TO (1) APPROVE THE FORM AND MANNER OF NOTICE OF ITS PROPOSED SETTLEMENT WITH BVI LIQUIDATORS AND (2) SET DEADLINES TO OBJECT

Robb Evans & Associates LLC (the "Receiver"), the Court-appointed receiver of

Defendants Nikolai Simon Battoo ("Battoo") and the BC Common Enterprise[1] (collectively with

Battoo, the "Defendants"), hereby moves (the "Motion") for entry of an order approving the

form and manner of notice of the Receiver's Motion to Approve the Final Settlement Agreement

with the BVI Liquidators (the "Settlement Motion"). In support of its Motion, the Receiver

states as follows:

### BACKGROUND

1.     In appointing the Receiver, the Court authorized the Receiver, among other

things, to compromise any actions or proceedings that the Receiver deems necessary and

---

[1] The "BC Common Enterprise" consists of BC Capital Group S.A., BC Capital Group International Limited a/k/a BC Capital Group Limited a/k/a BC Capital Group Global, and BC Capital Group Holdings S.A.

advisable to preserve the value receivership estate or to carry out the Receiver's mandate. (Prel. Inj. [Dkts #22] ¶ 42.G.)

2.      As previously reported, the Receiver and the BVI Liquidators reached an agreement in principal resolving all outstanding disputes between them, including the BVI Liquidators' claim to effectively all remaining assets of the receivership estate. (*See* Receiver's Mot. & Status Rep. [Dkt. #569] (attaching executed Settlement Term Sheet).) As contemplated in the resulting term sheet, the Receiver and the BVI Liquidators have now reduced that agreement in principal to a final written settlement agreement subject to Court approval (the "Settlement Agreement"). A copy of the Settlement Agreement is attached to this motion as Exhibit A.

3.       The Receiver is preparing a motion seeking Court approval of the Settlement Agreement (the "Settlement Approval Motion") as being in the best interests of the receivership estate. In anticipation of such motion, and in the interests of full transparency and due process, the Receiver now requests the Court to approve procedures described below for providing notice and opportunity to be heard to all interested parties as to whether the Court should approve the Settlement Motion.

**RELIEF REQUESTED**

4.      A federal district court has broad powers in fashioning appropriate relief over an equity receivership. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *see also* Fed. R. Civ. P. 66 ("The practice in the administration of estate by receivers . . . shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district court.").

5.      In considering whether to approve proposed settlements, courts generally consider the fairness, reasonableness, and adequacy of the agreement, while taking into account the costs and risks of not settling.  Courts need not follow any prescribed procedure for approving proposed settlements.  *See Godon v. Dadante*, No. 05-CV-2726, 2008 U.S. Dist. LEXIS 32281, at 48 n.11 (N.D. Ohio, April 18, 2008).

6.      Although the Court is empowered to approve the Settlement Agreement based on a direct report by the Receiver to the Court, the Receiver believes it is prudent here to provide notice to all potential stakeholders given the impact of the proposed settlement on the receivership estate.  *See id.*

7.      In proposing to provide broad notice, the Receiver does not suggest that all those who may receive such notice in fact would have standing to object to the proposed settlement. To the contrary, the Receiver reserves all grounds for responding to any objections, including lack of standing.

8.      Likewise, the Receiver does not intend receipt of notice hereunder to reflect any determination that the recipient has a valid claim to any distribution of receivership assets.  If the settlement is approved, the Receiver will separately propose a distribution plan for all remaining receivership assets subject to the Court's separate approval.  The Receiver expects to similarly provide notice of such plan and opportunity for interested parties to respond.

9.      Given the substantial number of potential claimants that the Receiver proposes to notice, many of whom are outside the United States, delivery of a physical copy of the Settlement Motion would be prohibitively expensive.  Rather, to more efficiently provide notice, the Receiver proposes to send notice principally via email and via other methods only where email addresses are unavailable.

10. Specifically, the Receiver seeks approval of the following notice procedures:

(a) All responses in support of, or objecting to, approval of the Settlement Agreement shall be in writing and filed with the clerk of the Court with copies served on the Receiver.

(b) The Receiver shall provide notice to the following persons or entities (collectively, "Interested Persons"):

    (i) All persons or entities known to the Receiver with disputed or undisputed claims;

    (ii) All persons or entities that have contacted the Receiver asserting claims;

    (iii) all known PIWM and PIWM-I Investors;

    (iv) all known BVI Investors;

    (v) all known creditors of any of the entities comprising the BC Common Enterprise.

(c) All persons or entities that received notice of the Settlement Motion through the Court's ECF system shall be deemed to have received all notices otherwise required under these procedures.

(d) The Receiver shall provide notice to all Interested Persons via an email substantially in the form of Exhibit B (the "Email Notice"). The Email Notice will provide the internet address (URL) for the location on the Receiver's website where the recipient may obtain a copy of (1) the Notice of Proposed Settlement and Objection Deadlines that shall be substantially in the form of Exhibit C ("Summary Notice"), and (2) a copy of the Receiver's

Motion to Approve Settlement with the BVI Liquidators, which shall attach a copy of the Settlement Agreement.[2]

      (e)     The Receiver shall use the email address, if any, reflected in the records of the receivership entities, or such other email address subsequently used by the person or entity to correspond with the Receiver.

      (f)     For persons or entities whom the Receiver does not have an email address but has a physical address, the Receiver shall deliver a copy of the Summary Notice via U.S. mail or other commercial carrier for delivery within seven days.

      (g)     For persons or entities who have contacted the Receiver through a representative, e.g., attorney, accountant, investment advisor, or family member, the Receiver shall direct notice to that representative and such notice shall be deemed sufficient.

      (h)     To allow the Receiver sufficient time to prepare notices for delivery, the Receiver shall send all required notices no later than 7 days following entry of an order approving these procedures.

      (i)     All responses to the Receiver's Settlement Motion shall be filed no later than 35 days following entry of an order approving these procedures, i.e., 28 days after the deadline for the Receiver to send notices. Any replies shall be filed no later than 21 days after the deadline for responses.

      (j)     Within five business days of receiving any actual notice that delivery of the Email Notice failed, the Receiver shall attempt to: (i) send the Email Notice to any

---

[2] The Receiver proposes to send links to both the Summary Notice and the Settlement Motion rather than attach copies in order to minimize the expense of sending out notice.

alternative email address of which the Receiver is aware; or (ii) send a physical copy of the

Summary Notice as provided in paragraph 13(f) above.

(k)     Additionally, the Receiver shall post a copy of the Settlement Motion on

its website so that it is accessible to all members of the public without charge.

11.     In proposing the forgoing notice procedures, the Receiver does not propose

publishing notice in any newspaper or other periodical of general circulation.  The Receiver

previously published notice of the claims bar date and related claims procedures in the

international edition of the Wall Street Journal at a cost of over $50,000.  Notwithstanding such

expense, the Receiver is unaware of any claimant having contacted the Receiver because of such

publication implying little benefit to providing publication notice under these circumstances.

Moreover, to the extent that such publication notice did have some unknown effect, it is

reasonable to infer that any persons previously reached by such publication would have already

contacted the Receiver or otherwise involved themselves in this case so that they will receive

notice of the Settlement Motion via the means otherwise proposed here.

12.     In the Receiver's experience, the procedures proposed here are reasonably

calculated to provide actual notice to all known potential claimants and does so at substantially

less cost to the receivership than attempting to deliver physical notices or some other means.

**WHEREFORE,** Robb Evans & Associates LLC, in its capacity as court-appointed

Receiver, respectfully requests the Court enter an order: (a) granting the Motion; (b) approving

the procedures for providing notice set forth in this Motion; (c) directing all responses to the

Receiver's Settlement Motion be filed on a specific date no later than 35 days after entry of an

order granting this Motion; (d) directing all replies be filed on a specific date no later than 21

days thereafter; (e) approving the form of the Email Notice and Summary Notice, attached as

Exhibits B and C respectively; and (f) granting the Receiver such further relief as the Court may deem just and proper.

Dated: August 4, 2017                         Respectfully submitted,

                                              **ROBB EVANS & ASSOCIATES LLC,**
                                              **RECEIVER**

                                              By:  /s/    Blair R. Zanzig
                                                       (One of Its Attorneys)

                                              Blair R. Zanzig (No. 6273293)
                                              John Hiltz (No. 6289744)
                                              Alex J. Whitt (No. 6315835)
                                              **HILTZ & ZANZIG LLC**
                                              53 West Jackson Blvd., Suite 205
                                              Chicago, Illinois 60604
                                              Telephone: 312.566.9008
                                              Fax:  312.566.9015

                                              *Counsel for Robb Evans & Associates LLC in*
                                              *its capacity as Receiver*

## CERTIFICATE OF SERVICE

I, Blair R. Zanzig, an attorney, hereby certify that, on the 4th day of August 2017, I caused a true and correct copy of the foregoing **Receiver's Motion to (1) Approve the Form and Manner of Notice of Its Proposed Settlement with BVI Liquidators and (2) Set Deadlines to Object** to be served through the Court's Electronic Case Filing System on the following:

Alexander S. Lorenzo,
alexander.lorenzo@alston.com

Michael F. Cockson
jane.thompson@faegrebd.com, michael.cockson@faegrebd.com

AUSA – Chicago
usailn.ecfausa@usdoj.gov

Trina K Taylor
trina.taylor@faegrebd.com, faegrebddocket@faegrebd.com,
colleen.russell@faegrebd.com

Carlin R Metzger
cmetzger@cftc.gov, nhooper@cftc.gov

William S. Sugden
will.sugden@alston.com

Gary Owen Caris
gcaris@diamondmccarthy.com

Emily L Seymore
emilyseymore@paulhastings.com, toyagarcia@paulhastings.com

James Arthur McGurk
james@jamesmcgurklaw.com

Amanda Leigh Burks
hayesdj@sec.gov, aburks@cftc.gov, sikoraj@sec.gov, mitchelljd@sec.gov

/s/ Blair R. Zanzig

# EXHIBIT A
**(Settlement Agreement)**

## FINAL SETTLEMENT AGREEMENT

Robb Evans & Associates LLC in its capacity as the court-appointed receiver (the "**Receiver**") in *United States Commodity Futures Trading Commission v. Battoo et al.,* No. 12-cv-07127 (the "**US Case**"), and Hadley Chilton and John Greenwood in their capacity as joint liquidators of the BVI Funds (as defined below) (collectively, the "**BVI Liquidators**") hereby enter into this Final Settlement Agreement (the "**Agreement**"). The Receiver and the BVI Liquidators are collectively referred to here as the "**Parties**."

The Parties enter into this Agreement subject to the following recitals:

A.    On September 6, 2012, in the United States District Court for the Northern District of Illinois (the "**US Court**"), the United States Commodity Futures Trading Commission ("**CFTC**") filed its complaint alleging various securities law violations against Nikolai Battoo ("**Battoo**"), and companies that he controlled, including BC Capital Group S.A.; BC Capital International Group Limited, a/k/a BC Capital Group Limited a/k/a BC Capital Group Global; and BC Capital Group Holdings, S.A. (collectively, the "**BC Common Enterprise**" and with Battoo, the "**US Defendants**").

B.    On September 27, 2012, the US Court appointed Robb Evans & Associates LLC as "Receiver, with the full powers of an equity receiver, over Defendants and their affiliates and subsidiaries, and all of the funds, properties, premises, accounts, businesses, partnerships, sole proprietorships and any other kinds of assets directly or indirectly owned, beneficially or otherwise, managed or controlled by the Defendants, whether held in their own names or in the name of others ('Receivership Assets')." (Preliminary Injunction, US Case Dkt. #22, ¶ 41.)

C.    Among other things, the US Court authorized the Receiver to "[i]nitiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court that the Receiver deems necessary and advisable to preserve or increase the value of [the Receivership Assets] or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order." (*Id.* ¶ 42.G.)

D.    On October 11, 2012, and dates thereafter, the BVI Liquidators were appointed as joint liquidators of certain companies, of which many were regulated mutual funds, including the following:

- Anchor Hedge Fund Limited
- FuturesOne A Investments Limited
- FuturesOne Class O Investments Limited
- FuturesOne Diversified Fund Ltd.
- FuturesOne Diversified Fund SPC Ltd.
- FuturesOne F1 Investment Limited
- FuturesOne F4 Investment Limited
- FuturesOne Innovative Fund SPC Ltd.
- Galaxy Fund, Inc.
- Galaxy PE, Limited

**EXECUTION VERSION**

- Phi R (squared) Investment Fund SPC Ltd.
- Phi R (squared) Master Series Investment Ltd.
- Silver Oak Fund Limited

Collectively these companies are hereinafter referred to as the "**BVI Funds**." The BVI Liquidators are liquidating the BVI Funds pursuant to the Virgin Islands Insolvency Act of 2003 and otherwise applicable British Virgin Islands law (collectively, "**BVI Law**"). In liquidating most of the BVI Funds, the BVI Liquidators are subject to the supervision by the High Court of Justice of the Virgin Islands (the "**BVI Court**").

E.      Prior to the appointment of the Receiver and the BVI Liquidators, the BVI Funds held and operated accounts at EFG Private Bank (Channel Islands) Limited ("**EFG**") in the Bailiwick of Guernsey ("**Guernsey**").

F.      Prior to the appointment of the Receiver, Battoo induced certain investors to place their money in managed accounts that he operated under the trade names Private International Wealth Management ("**PIWM**") and Private International Wealth Management – Insurance ("**PIWM-I**"). PIWM and PIWM-I are collectively referred to here as the "**PIWM Portfolios**" and investors in the PIWM Portfolios are referred to here as the "**PIWM Investors**."

G.      The US Defendants managed and controlled the funds invested by the PIWM Investors in the PIWM Portfolios, including purchasing and selling various interests in the BVI Funds for the putative benefit of the PIWM Investors.

H.      Alliance Investment Management, Ltd. ("**Alliance**"), a registered broker dealer regulated by the Securities Commission of the Bahamas, served as the custodian and nominee owner of assets held by or for the benefit of the PIWM Portfolios, including interests in the BVI Funds (such interests in the BVI Funds are hereafter referred to as the "**Alliance Custodial Interest in the BVI Funds**").

I.      Investors other than Alliance on behalf of the PIWM Investors also invested assets in the BVI Funds. Those investors – excluding Alliance – shall be referred to as the "**Direct BVI Fund Investors**."

J.      Following their respective appointment, the Receiver and the BVI Liquidators asserted competing claims to assets held by EFG. Accordingly, EFG instituted an interpleader action (the "**Guernsey Litigation**") in the Royal Court of Guernsey (the "**Guernsey Court**") to such funds. Ultimately, the Guernsey Court found in favor of the BVI Liquidators. The BVI Liquidators assert that having prevailed in the Guernsey Litigation they are entitled to recover significant costs and expenses from, *inter alia*, the Receiver and may have other potential claims.

K.      On July 29, 2016, the BVI Liquidators submitted claims in the US Case (the "**BVI Liquidators' Claims**") to assets the Receiver holds. (*See* Notice of Claims, US Case Docket No. 521.) The BVI Liquidators categorized such claims as either "**Administrative Claims**," "**Proprietary Claims**," or "**Master Claims**." As part of their Proprietary Claims, the BVI Liquidators, on behalf of the BVI Funds, assert an ownership interest in certain assets (the "**Disputed Assets**") and the BVI Liquidators assert that the Disputed Assets should not be

2

diminished or distributed by the Receiver to investors or creditors, but should instead be administered by the BVI Liquidators as part of their liquidations of the BVI Funds pursuant to BVI Law. The Disputed Assets are comprised of the "**English Litigation Recoveries,**" the "**Quantitative Recoveries,**" the "**MF Global Distributions,**" the "**Newedge Recoveries,**" the "**Whitebox Recoveries**" and the "**Quantsoft Recoveries**" as those terms are defined in the BVI Liquidators' Proprietary Claims.

      L.     The Receiver disputes the BVI Liquidators' Claims and otherwise contends that it should be permitted to distribute all Disputed Assets to all investors pursuant to an equitable plan approved by the US Court.

      M.    Recognizing that the costs of continuing to litigate their disputes would further exacerbate investors' losses and materially delay payments to investors, on June 14, 2017, the Receiver and the BVI Liquidators entered into that certain Settlement Term Sheet setting forth the principal terms by which the Parties would resolve all their outstanding disputes. As contemplated in the Settlement Term Sheet, the Parties now wish to enter into this Final Settlement Agreement which more specifically details their agreement and replaces the Settlement Term Sheet.

      **NOW, THEREFORE,** for and in consideration of the promises, mutual promises, covenants and considerations herein expressed, and intending to be legally bound hereby, the Parties agree as follows:

1.    <u>Execution Date</u>. For purposes of this Agreement, the "**Execution Date**" shall be the date on which the Parties sign the Agreement. If the Parties sign the Agreement on different days, the Execution Date shall be the date the last party to sign the Agreement does so.

2.    <u>Approval Orders</u>.

    (a) Within fourteen calendar days of the Execution Date:

        (i) the Receiver shall file a motion with the US Court seeking an order from the US Court approving and authorizing the Receiver to enter into and perform the terms of this Agreement; and

        (ii) the BVI Liquidators shall likewise file an application with the BVI Court seeking an order from the BVI Court approving and authorizing the BVI Liquidators to enter into and perform the terms of this Agreement.

    (b) The orders described in Section 2(a)(i) and 2(a)(ii) shall be referred to each as an "**Approval Order**" and collectively, the "**Approval Orders.**"

    (c) The Parties each agree to use their best efforts to obtain entry of an Approval Order from their respective Court no later than 150 calendar days after the Execution Date (the "**Primary Approval Order Entry Deadline**").

    (d) If either Party is unable to obtain entry of an Approval Order by the Primary Approval Order Entry Deadline, but that Party's respective Court has set a

hearing for such approval by a date that is not later than 210 calendar days after the Execution Date (the "**Backup Approval Order Entry Deadline**"), the deadline for obtaining an Approval Order shall be the Backup Approval Order Entry Deadline.

(e) Each Party's obligations under this Agreement is conditioned upon entry of an Approval Order by both the US Court and the BVI Court. If either Party is unable to obtain an Approval Order by the applicable deadline, this Agreement and the Settlement Term Sheet shall be deemed null and void, and without effect. In that event, the Parties agree not to use the Settlement Term Sheet, the Final Settlement Agreement, or any document prepared in connection therewith as evidence in any proceeding.

(f) Each Approval Order shall be deemed final once it is entered by the respective Court, and either (1) the time to appeal such order expired without anyone having appealed the Approval Order, or (2) if someone appeals the Approval Order, the Approval Order shall have been affirmed in its entirety and the time for any subsequent appeals shall have expired without anyone having appealed.

3.  Effective Date.

(a) The "**Effective Date**" shall be the day immediately following the occurrence of each of the following:

   (i)   Both Approval Orders are final as provided in Section 2(f) above;

   (ii)  One of the following shall have occurred: (A) Alliance shall have executed and delivered to the BVI Liquidators a waiver and release of the Alliance Custodial Interest in the BVI Funds in the form attached hereto as Exhibit A; (B) Alliance has taken such other steps to waive and release the Alliance Custodial Interest in the BVI Funds such that the BVI Liquidators are able to determine in their sole and absolute discretion that the Alliance Custodial Interest in the BVI Funds shall have been waived and released and the BVI Liquidators are no longer required to make a distribution to or otherwise keep a reserve of any kind for distribution to the Alliance Investment in the BVI Funds; or (C) the BVI Liquidators shall, in their sole and absolute discretion, have waived the requirements of this Section 3(a)(ii) in writing; and

   (iii) The BVI Liquidators have provided the Receiver all documents, pleadings, notices, and applications, including appropriate consent order, necessary to effect the dismissal of the Guernsey Litigation with prejudice and with all parties to the Guernsey Litigation to bear their own costs (the "Dismissal Documents"). The Dismissal Documents must be signed by all required parties, including the BVI Liquidators and EFG.

(b) No compromise or settlement set forth in this Agreement shall be in any way binding upon either of the Parties until the Effective Date.

4

**EXECUTION VERSION**

(c) From and after the Effective Date, the BVI Liquidators agree to file no further pleadings, claims, or assert any other interests in the US Case for any matter or issue that is or could have been compromised or resolved in this Final Settlement Agreement, and, likewise, the Receiver agrees to file no further pleadings, claims, or assert any other interests in any liquidation proceedings related to the BVI Funds, including any proceedings ancillary to the liquidation of the BVI Funds, for any matter or issue that is or could have been compromised or resolved in this Final Settlement Agreement. Notwithstanding the foregoing, either Party may file any pleadings or claims necessary to enforce the terms of the Final Settlement Agreement or as required to effectuate the terms of the Final Settlement Agreement.

4. <u>Settlement Amount and Payment</u>. Within fourteen calendar days of the Effective Date, the Receiver shall cause USD 9 million of the Disputed Funds (the "**Settlement Payment**") to be wired to the BVI Liquidators at an account to be specified in writing by the BVI Liquidators. The funds constituting the Settlement Payments shall be administered as part of the liquidation estates of the BVI Funds pursuant to BVI Law. The date the Receiver makes the Settlement Payment shall be the "**Payment Date**."

5. <u>Dismissal of Guernsey Litigation</u>. On the Payment Date, the Receiver shall cause the Dismissal Documents to be filed in the Guernsey Court and take such other steps as the Guernsey Court may require to obtain entry of an order dismissing the Guernsey Litigation with prejudice and with each side to bear its own costs.

6. <u>Waiver of BVI Claims in US Case</u>.

(a) Effective upon receipt of the Settlement Payment into the account designated pursuant to Section 4 above, the BVI Liquidators will then be deemed to have:

(i) waived all rights to any of the remaining funds held by the Receiver;

(ii) withdrawn all claims in the US Case, including the Proprietary Claims, Master Claims, Administrative Claims, and any other claims asserted by or on behalf of the BVI Funds, including but not limited to the claims of FuturesOne Diversified Fund Ltd.; and

(iii) withdrawn all objections to the Receiver's prior applications for fees and expenses, including any objections to fees and costs incurred by professionals employed by or on behalf of the Receiver.

(b) Within seven calendar days of the Payment Date, the BVI Liquidators will file in the US Case a notice of withdrawal of claims and objections confirming the withdrawal of the claims and objections described in Sections 6(a)(ii) and 6(a)(iii).

7. <u>Waiver of Receiver Claims in BVI Case</u>. Simultaneous with the waiver by the BVI Liquidators in Section 6 above, the Receiver shall be deemed to have waived any and all of its remaining rights or claims against the BVI Funds, their assets, their investors and

5

the BVI Liquidators; and the Receiver will not consequently participate in any distributions, or fee applications, made by the BVI Liquidators.

8. Retention of Balance of Disputed Funds.

   (a) Other than the Settlement Payment described in Section 4 above, the Receiver shall retain the balance of the Disputed Assets to be administered under applicable US law as part of the receivership estate created in the US Case.

   (b) As a material part of the consideration for agreeing to the Receiver's retention of the Disputed Assets less the Settlement Payment, effective upon receipt of the Settlement Payment, the BVI Liquidators shall cancel all interests in the BVI Funds held in the name of, for the benefit of, or managed by, any of the receivership entities, including all interests managed by the US Defendants on behalf of the PIWM Investors. Specifically, the BVI Liquidators shall cancel all interests in BVI Funds held in the name of Alliance as custodian or nominee owner for the benefit of any of the receivership entities and/or the PIWM Investors.

   (c) As a consequence of the cancellation of interests described in Section 8(b) above, neither the Receiver on behalf of any receivership entity, any of the PIWM Investors, nor Alliance as custodian or nominee owner for the receivership entities and/or the PIWM Investors shall be entitled to any distribution from the BVI Liquidators on account of such cancelled interests.

   (d) Likewise, Direct BVI Fund Investors will be entitled to recover only from distributions by the BVI Liquidators as part of the liquidation of the BVI Funds under the supervision of the BVI Court and will not be entitled to receive any distributions from the Receiver. Notwithstanding the foregoing, the Receiver may elect, at its sole discretion, to make distributions from the receivership estate to any subset of BVI Fund Investors it chooses in the interests of equity as approved by the US Court.

9. Mutual Releases.

   (a) Effective upon the full and complete satisfaction of the terms of this Settlement Agreement, including receipt of the Settlement Payment by the BVI Liquidators as provided in Section 4 above, the Receiver shall fully, completely and finally waive, release, remise, acquit, and forever discharge and covenant not to sue the BVI Liquidators, the BVI Funds, as well as the BVI Liquidators' and the BVI Funds' attorneys, accountants, predecessors, successors, insurers, representatives, and agents retained by the BVI Liquidators and the BVI Funds subsequent to the date that each of the BVI Funds was place into liquidation and prior to the Execution Date, with respect to any and all claims, demands, suits, manner of obligation, debt, liability, tort, covenant, contract, or causes of action of any kind whatsoever, at law or in equity.

**EXECUTION VERSION**

(b) Effective upon the full and complete satisfaction of the terms of this Settlement Agreement, and simultaneous with the releases in Section 9(a) above, the BVI Liquidators shall fully, completely and finally waive, release, remise, acquit, and forever discharge and covenant not to sue the Receiver, the receivership estate, and any of their officers, directors, shareholders, employees, attorneys, accountants, predecessors, successors, insurers, representatives, and agents of the Receiver or the receivership estate that have been retained by the Receiver or the receivership estate subsequent to September 6, 2012 and prior to the Execution Date, with respect to any and all claims, demands, suits, manner of obligation, debt, liability, tort, covenant, contract, or causes of action of any kind whatsoever, at law or in equity.

(c) The Parties acknowledge and agree that these releases are GENERAL RELEASES. The Parties expressly waive and assume the risk of any and all claims for damages which exist as of this date, but which they do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect his or her or its decision to enter into this Agreement. The Parties specifically do not, however, waive or release any claim that may arise for breach of this Agreement.

(d) The Parties warrant and represent that they have not assigned or otherwise transferred any claim or cause of action released by this Agreement.

10.  Further Assurances. The Parties agree to take such further action or execute such additional documents as may be necessary to effectuate the terms of this Agreement.

11.  Authority. Subject to the occurrence of the Effective Date, the Parties represent and warrant that they possess full authority to enter into this Agreement and to lawfully and effectively release the opposing Party as set forth herein, free of any rights of settlement, approval, subrogation, or other condition or impediment. This undertaking includes specifically, without limitation, the representation and warranty contained in Section 9(d).

12.  Entire Agreement. The Parties represent and agree that no promise, inducement, or agreement other than as expressed herein has been made to them and that this Agreement is fully integrated, supersedes all prior agreements and understandings, including without limitation, the Settlement Term Sheet entered into by the Parties on June 14, 2017, and any other agreement between the Parties, and contains the entire agreement between the Parties.

13.  No Third-Party Beneficiaries. No person other than the Parties hereto (and the representatives identified in Section 9) is intended to be or shall be a beneficiary of this Agreement. Nothing in this Agreement shall be construed as a release of any claim held by any Party against any other person not expressly identified in Section 9 of this Agreement, including, without limitation, any former officer, director, shareholder, employee, attorney, accountant, predecessor, successor, insurer, representative, or agent of either of the Parties, or any officers, directors, or equity interest holders of either the

7

**EXECUTION VERSION**

US Defendants or the BVI Funds. For the further avoidance of doubt, nothing in this Agreement is or is intended to release any claim, right, cause of action, judgment or any other right whatsoever of either Party against Nikolai Battoo.

14. <u>Preservations of Causes of Action.</u> Other than the releases and waivers contained in Section 6, 7, and 9 of this Agreement, neither Party to this Agreement intends to or is waiving, releasing, or in any other way modifying any other claim, right, or cause of action of any kind against any person, party, or other entity ("**Other Claims**"). The Parties expressly intend to preserve all such Other Claims.

15. <u>Costs, Expenses and Attorneys' Fees.</u> Each of the Parties will bear its own costs, expenses, and attorneys' fees incurred in connection with any of the disputes between them, including the Guernsey Litigation and the US Case.

16. <u>Governing Law and Jurisdiction.</u> The laws of the United States of America, including United States federal common law, shall apply to and control any interpretation, construction, performance or enforcement of this Agreement. The Parties agree that the exclusive jurisdiction for any legal proceeding arising out of or relating to this Agreement shall be the United States District Court for the Northern District of Illinois and all Parties hereby waive any challenge to personal jurisdiction or venue in that Court.

17. <u>Construction.</u> This Agreement shall be construed as if the Parties jointly prepared it, and any uncertainty or ambiguity shall not be interpreted against any one Party.

18. <u>Modification.</u> No oral agreement, statement, promise, undertaking, understanding, arrangement, act or omission of any Party, occurring subsequent to the date hereof may be deemed an amendment or modification of this Agreement unless reduced to writing and signed by the Parties hereto or their respective successors or assigns.

19. <u>Number.</u> Whenever applicable within this Agreement, the singular shall include the plural and the plural shall include the singular.

20. <u>Headings.</u> The headings of paragraphs herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

21. <u>Counterparts.</u> This Agreement may be executed in several counterparts and all counterparts so executed shall constitute one agreement binding on all Parties hereto, notwithstanding that all the Parties are not signatories to the original or the same counterpart. Copies of signatures transmitted electronically, including via facsimile and email, shall be accepted the same as an original signature. A copy of this Agreement may be used in any action brought to enforce or construe this Agreement.

22. <u>No Waiver.</u> No failure to exercise and no delay in exercising any right, power or remedy under this Agreement shall impair any right, power or remedy which any Party may have, nor shall any such delay be construed to be a waiver of any such rights, powers or remedies or an acquiescence in any breach or default under this Agreement, nor shall any

**EXECUTION VERSION**

waiver of any breach or default of any Party be deemed a waiver of any default or breach subsequently arising.

**On behalf of the BVI Funds and BVI Liquidators:**

Hadley J. Chilton
*Joint Liquidator*

Dated: 3/8/17

**On behalf of Robb Evans & Associates LLC solely in its capacity as court-appointed Receiver over the U.S. Defendants:**

Brick Kane

Dated:

EXECUTION VERSION

waiver of any breach or default of any Party be deemed a waiver of any default or breach subsequently arising.

**On behalf of the BVI Funds and BVI Liquidators:**

_____

Hadley J. Chilton
*Joint Liquidator*

Dated:_____

**On behalf of Robb Evans & Associates LLC solely in its capacity as court-appointed Receiver over the U.S. Defendants:**

_____
Brick Kane

Dated:___8-3-17_____

9

**Exhibit A**

### WAIVER AND RELEASE AGREEMENT

This agreement is dated __ August 2017

**PARTIES**

(1)     Hadley Chilton and John Greenwood of Baker Tilly (BVI) Limited, PO Box 650, Tropic Isle Building, Nibbs Street, Road Town, Tortola, British Virgin Islands in their capacity as liquidators (the '**Joint Liquidators**') for each of the following: (1) Anchor Hedge Fund Limited (in liquidation); (2) FuturesOne Diversified Fund SPC Ltd (in liquidation); (3) FuturesOne Innovative Fund SPC Ltd (in liquidation); (4) Phi R(squared) Investment Fund SPC Ltd (in liquidation); (5) Silver Oak Fund Limited (in liquidation); (6) Phi R(squared) Master Series Investment Ltd (in liquidation); (7) FuturesOne Class O Investments Limited (in liquidation); (8) FuturesOne A Investments Limited (in liquidation); (9) FuturesOne F4 Investment Limited (in liquidation); (10) FuturesOne F1 Investment Limited (in liquidation); (11) FuturesOne Diversified Fund Limited (in liquidation); (12) Galaxy Fund Inc. (in liquidation); (13) Galaxy Fund PE, Ltd (in liquidation) (together the '**Funds**'); and

(2)     Alliance Investment Management, Ltd., a registered broker dealer regulated by the Securities Commission of the Bahamas ('**Alliance**').

**BACKGROUND**

(A)     Prior to 6 September 2012, Nikolai Battoo ('**Battoo**') induced certain investors to place money in managed accounts that he operated under the trade names Private international Wealth Management ('**PIWM**') and Private International Wealth Management – Insurance ('**PIWM-I**'). PIWM and PIWM-I are hereafter referred to as the '**PIWM Portfolios**' and investors in the PWM Portfolios are hereafter referred to as the '**PIWM Investors**.'

(B)     Alliance served as the custodian of the funds invested in the PIWM Portfolios. At Battoo's direction, certain of these funds were invested (the '**Investments**') into the Funds, including without limitation those Investments set forth on Schedule 1 hereto.

(C)     As the custodian for the Investments, Alliance is reflected as the shareholder of record for the Investments in the books and records of the Funds.

(D)     The Joint Liquidators were appointed as liquidators of the Funds pursuant to:

    a.     The BVI Insolvency Act, 2003 (as amended) – in the case of:

        i.      Anchor Hedge Fund Limited (in liquidation) – 24 October 2012;
        ii.     FuturesOne Diversified Fund SPC Ltd (in liquidation) – 24 October 2012;
        iii.    FuturesOne Innovative Fund SPC Ltd (in liquidation) – 24 October 2012;
        iv.     Phi R(squared) Investment Fund SPC Ltd (in liquidation) – 24 October 2012;
        v.      Silver Oak Fund Limited (in liquidation) – 24 February 2013;
        vii.    Phi R(squared) Master Series Investment Ltd (in liquidation) – 21 March 2013;
        viii.   FuturesOne Class O Investments Limited (in liquidation) – 21 March 2013;
        ix.     FuturesOne A Investments Limited (in liquidation) – 21 March 2013;
        x.      FuturesOne F4 Investment Limited (in liquidation) – 3 April 2013;
        xi.     FuturesOne F1 Investment Limited (in liquidation) – 16 April 2013; and
        xii.    FuturesOne Diversified Fund Limited (in liquidation) – 22 July 2013.

    b.     The BVI Business Companies Act, 2004 (as amended) – in the case of:

        i.      Galaxy Fund Inc. (in liquidation) – 17 April 2013; and
        ii.     Galaxy Fund PE, Ltd (in liquidation) – 17 April 2013

(E)     On 6 September 2012, in the United States District Court for the Northern District of Illinois (the '**US Court**'), the United States Commodity Futures Trading Commission ('**CFTC**') filed a complaint

alleging various securities law violations against Nikolai Battoo ('**Battoo**'), and companies that he controlled, including BC Capital Group S.A.; BC Capital International Group Limited, a/k/a BC Capital Group Limited a/k/a BC Capital Group Global; and BC Capital Group Holdings, S.A. (collectively, the '**BC Common Enterprise**' and with Battoo, the '**US Defendants**').

(F)    On 27 September 2012, the US Court appointed Robb Evans & Associates LLC ('**US Receiver**') as "Receiver, with the full powers of an equity receiver, over Defendants and their affiliates and subsidiaries, and all of the funds, properties, premises, accounts, businesses, partnerships, sole proprietorships and any other kinds of assets directly or indirectly owned, beneficially or otherwise, managed or controlled by the Defendants, whether held in their own names or in the name of others ('**Receivership Assets**')."

(G)    Since their appointment, the Joint Liquidators and the US Receiver have been involved in various disputes regarding the respective assets of the Funds and the BC Common Enterprise, including, but not limited to, the Investments (collectively, the '**Disputes**').

(H)    On 14 June 2017, the Joint Liquidators and the Receiver entered into a term sheet (the '**Term Sheet**') that sets forth the terms of a global resolution of all of the Disputes. The Term Sheet provides, among other things, that as a condition to a final settlement of the Disputes, any purported right of Alliance, in its capacity as shareholder of record and/or nominee owner of any claim against or interest in the Funds on behalf of the PIWM Investors, to a distribution of any kind by the Funds be waived. The Term Sheet further contemplates that the Receiver and the Joint Liquidators will enter into a final settlement agreement memorializing the terms of the Term Sheet (the '**Final Settlement Agreement**').

(I)    In furtherance of the objectives as set forth in the Term Sheet and in accordance with its obligations as a registered broker dealer, Alliance has agreed to the waiver and release set forth in this Agreement.

**AGREED TERMS**

1.    **DEFINITIONS AND INTERPRETATIONS**

In this agreement, unless the context otherwise requires, the following words and expressions have the following meanings:

'**Related Parties**' means a party's parent, subsidiaries, assigns, transferees, representatives, principals, agents, officers or directors

2.    **EFFECT OF THIS AGREEMENT**

The parties hereby agree that as at the Effective Date of the Final Settlement Agreement:

2.1    Alliance:

(a)    waives any and all rights ('**Alliance Rights**') to any entitlements Alliance may have to share in the distribution of the Funds' Assets in respect of the Investments (the '**Waiver**');

(b)    refrains from making any claim in the liquidations of the Funds in respect of the Alliance Rights; and

(c)    releases the Joint Liquidators and the Funds from any and all actions, claims, rights, demands and set-offs, whether in this jurisdiction or any other, whether or not presently known to the parties or to the law, and whether in law or equity, that it, its Related Parties or any of them ever had, may have or hereafter can, shall or may have against the Joint Liquidators or the Funds or any of their Related Parties, such that the Joint Liquidators are no longer required

to make a distribution to or otherwise keep a reserve of any kind for distribution to Alliance (the '**Release Claims**').

2.2    The Joint Liquidators in their absolute discretion are able to determine that Alliance has:

   (a)    waived all of the Alliance Rights;

   (b)    no claims in any of the liquidations of the Funds; and

   (c)    provided the Released Claims such that Alliance cannot take any action (including any court action or other proceedings for recovery in any jurisdiction) against the Joint Liquidators in respect of the Released Claims.

3.    **AGREEMENT NOT TO SUE**

3.1    Alliance agrees, on behalf of itself and on behalf of its Related Parties not to sue, commence, voluntarily aid in any way, prosecute or cause to be commenced or prosecuted against the Joint Liquidators or the Funds or either of their Related Parties any action, suit or other proceeding concerning the Released Claims, in this jurisdiction or any other.

3.2    Clause 2.1 and Clause 3.1 shall not apply to, and the Released Claims shall not include, any claims in respect of any breach of this Agreement.

4.    **WARRANTIES AND AUTHORITY**

4.1    Alliance warrants and represents that it has not sold, transferred, assigned or otherwise disposed of its interest in the Released Claims.

4.2    Alliance warrants and represents that it has not sold, transferred, assigned or otherwise disposed of its interest in the Alliance Rights.

4.3    Each party warrants and represents to the other with respect to itself that it has the full right, power and authority to execute, deliver and perform this agreement.

5.    **INDEMNITIES**

Alliance hereby indemnifies, and shall keep indemnified, the Joint Liquidators and the Funds against all costs and damages (including the entire legal expenses of the parties) incurred in all future actions, claims and proceedings in respect of any of the Alliance Rights or Released Claims which it or its Related Parties or any of them may bring against the Joint Liquidators or the Funds or either of their Related Parties.

6.    **NO ADMISSION**

This agreement is entered into in connection with the Final Settlement Agreement and in the light of other considerations. It is not, and shall not be represented or construed by the parties as, an admission of liability or wrongdoing on the part of either party to this agreement or any other person or entity.

7.    **MODIFICATION UPON CERTAIN CONDITIONS**

If any provision or part-provision of this agreement is or becomes invalid, illegal or unenforceable, it shall be deemed modified to the minimum extent necessary to make it valid, legal and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted. Any modification to or deletion of a provision or part-provision under this clause shall not affect the validity and enforceability of the rest of this agreement.

8.      **ENTIRE AGREEMENT**

8.1     This agreement constitutes the entire agreement between the parties and supersedes and extinguishes all previous agreements, promises, assurances, warranties, representations and understandings between them, whether written or oral, relating to its subject matter.

8.2     Each party agrees that it shall have no remedies in respect of any statement, representation, assurance or warranty (whether made innocently or negligently) that is not set out in this agreement. Each party agrees that it shall have no claim for innocent or negligent misrepresentation or negligent misstatement based on any statement in this agreement.

9.      **CONFIDENTIALITY**

The terms of this agreement, and the substance of all negotiations in connection with it, are confidential to the parties and their advisers, who shall not disclose them to, or otherwise communicate them to, any third party without the written consent of the other party other than:

9.1     to the US Receiver and its legal advisors;

9.2     to the parties' respective auditors, insurers and lawyers on terms which preserve confidentiality;

9.3     pursuant to an order of a court of competent jurisdiction, or pursuant to any proper order or demand made by any competent authority or body where they are under a legal or regulatory obligation to make such a disclosure; [and]

9.4     as far as necessary to implement and enforce any of the terms of this agreement.

10.     **GOVERNING LAW**

This agreement and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the law of the Territory of the Virgin Islands.

11.     **JURISDICTION**

Each party irrevocably agrees that the courts of the Territory of the Virgin Islands shall have exclusive jurisdiction to settle any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with this agreement or its subject matter or formation.

12.     **CO-OPERATION**

The parties shall deliver or cause to be delivered such instruments and other documents at such times and places as are reasonably necessary or desirable, and shall take any other action reasonably requested by the other party for the purpose of putting this agreement into effect.

13.     **COUNTERPARTS**

This agreement may be executed in any number of counterparts, each of which when executed shall constitute a duplicate original, but all the counterparts shall together constitute the one agreement. For the purposes of completion, signatures by the parties' legal advisers shall be binding.

14.     **VARIATION**

No variation of this agreement shall be effective unless it is in writing and signed by the parties (or their authorised representatives).

This agreement has been entered into on the date stated at the beginning of it.

Signed by Hadley Chilton for and on behalf of the
Joint Liquidators



....................

Hadley Chilton

Signed by [NAME OF DIRECTOR] for and on behalf
of Alliance

....................

[                    ]

Schedule 1

[To be inserted]

# EXHIBIT B
## (Proposed Email Notice)

**Proposed Form of Email Notice**

TO:  [Interested Parties]

FROM:  BCCapital@robbevans.com

SUBJECT:  Important Information Regarding Battoo / BC Capital Receivership

---

Robb Evans & Associates LLC (the "Receiver") is the court-appointed receiver for certain entities previously controlled by Nikolai Battoo, including BC Capital Group S.A.

The Receiver is seeking court approval of a settlement agreement that will substantially affect the receivership.

You are receiving this notice because you may have been an investor in one or more investments operated directly or indirectly by Nikolai Battoo or your interests may otherwise be affected by the proposed settlement.  [*For your information, the Joint Official Liquidators of the Maven Assurance Ltd and related companies have informed the Receiver that they support the proposed settlement.*][3]

You can find more specific information, including copies of the Receiver's motion and notice of important deadlines, free of charge at the following internet address:

***http://www.robbevans.com/find-a-case/casepage/bc-capital-group-s-a-et-al-receiver/proposed-settlement-between-the-receiver-and-the-bvi-liquidators***

Sincerely,
Robb Evans & Associates LLC,
*In its capacity as Receiver for Nikolai Battoo,*
*BC Capital Group S.A., BC Capital International*
*Group Limited, BC Capital Group Holdings, S.A.*

---

[3] The italicized sentence shall be added (without emphasis) to notices being sent to potential claimants who invested in the PIWM Portfolios through Maven Assurance Ltd and related companies that are now in liquidation.

# EXHIBIT C
**(Proposed Summary Notice)**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:12-cv-07127 |
| NIKOLAI SIMON BATTOO; BC CAPITAL GROUP S.A.; BC CAPITAL GROUP INTERNATIONAL LIMITED a/k/a BC CAPITAL GROUP LIMITED a/k/a BC CAPITAL GROUP GLOBAL; AND BC CAPITAL GROUP HOLDINGS S.A., | ) ) ) ) ) ) ) | Hon. Edmond E. Chang |
| Defendants. | ) ) | |

NOTICE OF RECEIVER'S MOTION TO APPROVE
PROPOSED SETTLEMENT WITH BVI LIQUIDATORS
(Deadline to File Written Response: September __, 2017)

I.  **INTRODUCTION AND BACKGROUND.**

Robb Evans & Associates LLC is the court-appointed receiver over the assets of Nikolai Battoo, and several companies he controlled.  Through those companies, Battoo offered managed investment account services under the trade names "Private International Wealth Management" and "Private International Wealth Management – Insurance."  In this notice, those investment vehicles will be collectively referred to as the "**PIWM Portfolios**."  Investors who invested in the PIWM Portfolios (often through another institution or advisor) are referred to here as the "**PIWM Investors**."

Battoo also operated certain hedge funds and other investment vehicles that he formed in the British Virgin Islands, which will be collectively referred to as the "**BVI Funds**."  The BVI Funds include the following:

- Anchor Hedge Fund Limited
- FuturesOne A Investments Limited
- FuturesOne Class O Investments Limited
- FuturesOne Diversified Fund Ltd.
- FuturesOne Diversified Fund SPC Ltd.
- FuturesOne F1 Investment Limited
- FuturesOne F4 Investment Limited
- FuturesOne Innovative Fund SPC Ltd.
- Galaxy Fund, Inc.
- Galaxy PE, Limited
- Phi R (squared) Investment Fund SPC Ltd.
- Phi R (squared) Master Series Investment Ltd.
- Silver Oak Fund Limited

Battoo caused the PIWM Portfolios to invest in the BVI Funds. Separate and apart from the PIWM Portfolios, other investors invested in the BVI Funds and those separate investors are referred to here as the "**Direct BVI Fund Investors**."

The BVI Funds are being liquidated under British Virgin Islands law.  Hadley Chilton and John Greenwood – two insolvency practitioners based in the British Virgin Islands – serve as the Joint Official Liquidators of the BVI Funds and are referred to here as the "**BVI Liquidators**."

The Receiver and the BVI Liquidators dispute whether certain assets seized and held by the Receiver – which as a practical matter encompass nearly all the assets currently held by the Receiver -- may be distributed by the Receiver under U.S. law or must be turned over to the BVI Liquidators to be distributed under British Virgin Islands law.

## II.     SUMMARY OF CERTAIN KEY PROVISIONS OF THE PROPOSED SETTLEMENT.

After years of litigation and negotiation, the BVI Liquidators and the Receiver have entered into an agreement that resolves their dispute.  On [**DATE**], the Receiver filed a motion asking the U.S. Court overseeing the receivership to approve the proposed settlement.  If the Court approves the settlement, and other conditions described in the settlement agreement are satisfied, the Receiver shall turnover $9 million to the BVI Liquidators to be administered according to British Virgin Islands law.

Additionally, if the Court approves the settlement agreement, PIWM Investors would be precluded from receiving any distribution from the BVI Liquidators on account of any investment in the BVI Funds made through the PIWM Portfolios.  Correspondingly, with limited exceptions solely within the Receiver's discretion, Direct BVI Fund Investors would be precluded from receiving any distributions from the remaining receivership assets on account of their investment in the BVI Funds.

Please note that this notice is not intended as a complete description of the settlement agreement or how such settlement may affect you.  A complete copy of the Receiver's Motion to Approve Settlement with the BVI Liquidators, which includes a copy of the proposed settlement agreement, is available to you at no cost here:

http://www.robbevans.com/find-a-case/casepage/bc-capital-group-s-a-et-al-receiver/proposed-settlement-between-the-receiver-and-the-bvi-liquidators

## III.     PROCEDURES AND DEADLINES FOR YOU TO RESPOND.

RESPONSE DEADLINE.    IF YOU WISH TO COMMENT ON WHETHER THE COURT SHOULD APPROVE OR REJECT THE PROPOSED SETTLEMENT, YOU MUST FILE A WRITTEN RESPONSE WITH THE COURT NO LATER THAN [**DATE**] AT 5:00 PM (CDT).  YOU MUST INCLUDE THE FOLLOWING LANGUAGE AT THE TOP OF YOUR RESPONSE:   "CFTC V. BATTOO, CASE NUMBER 12-CV-07127."

TO FILE YOUR RESPONSE, YOU MUST SEND IT VIA U.S. MAIL, OVERNIGHT COURIER OR HAND DELIVERY SO THAT THE CLERK OF THE COURT RECEIVES IT ON OR BEFORE THE DEADLINE AT THE FOLLOWING ADDRESS:

Clerk of the United States District Court
for the Northern District of Illinois
219 S. Dearborn
Chicago, Illinois 60604

With copies to the following:

Robb Evans and Associates LLC
Attn: BC Capital / Battoo Receiver
11450 Sheldon Street
Sun Valley, California 91352-1121

or via email to BCCapital@robbevans.com

or via fax to +1 (818) 768-8802

PLEASE NOTE: Any response you send will become part of the official court record and may become accessible by the public. You should redact or omit any sensitive information, including account numbers and social security numbers.

Finally, if the settlement agreement with the BVI Liquidators is approved, the Receiver intends to separately propose a plan for distributing the remaining receivership assets. At that time, you will receive separate notice of such proposed and a similar opportunity to respond then.