# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:12-cv-07127 |
| NIKOLAI SIMON BATTOO; BC CAPITAL GROUP S.A.; BC CAPITAL GROUP INTERNATIONAL LIMITED a/k/a BC CAPITAL GROUP LIMITED a/k/a BC CAPITAL GROUP GLOBAL; AND BC CAPITAL GROUP HOLDINGS S.A., | ) ) ) ) ) ) ) | Hon. Edmond E. Chang |
| Defendants. | ) | |

## RECEIVER'S TENTH AND FINAL FEE APPLICATION

Robb Evans & Associates LLC (the "Receiver"), the Court-appointed receiver of

Defendants Nikolai Simon Battoo ("Battoo") and the BC Common Enterprise[1] (collectively with

Battoo, the "Defendants") submits this Tenth and Final Fee Application seeking approval to pay

fees and expenses of the Receiver and professionals retained by the Receiver during the more

than 18-month period from January 1, 2018, through June 30, 2019 (the "Tenth Interim Period"),

plus authority to pay the actual additional fees incurred from July 1, 2019, through the closing of

this receivership up to the amounts estimated below.  Specifically, during the Tenth Interim

Period, the Receiver incurred professional fees of $160,535.10 and net out-of-pocket costs of

---

[1] As defined in the Preliminary Injunction, the "BC Common Enterprise" consists of BC Capital Group S.A., BC Capital Group International Limited a/k/a BC Capital Group Limited a/k/a BC Capital Group Global, and BC Capital Group Holdings S.A.

$22,345.32. The Receiver's counsel, Hiltz Zanzig & Heiligman LLC[2], incurred fees and costs totaling $85,007.04.

In addition, the Receiver has reserved a total of approximately $76,000 to cover estimated fees and expenses that the Receiver and its counsel may need to incur from July 1, 2019, through the close of the case, including professional fees and costs for winding down the Bahamian proceedings and out-of-pocket expenses required for preparing final tax returns. The Receiver requests authority to pay the actual reasonable and necessary fees and expenses up to such amount. In its closing motion filed concurrently with this motion, the Receiver requests authority to turn over to the CFTC any reserve amounts not actually used.

In preparing this fee application, the Receiver has consulted and followed the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Commodity Futures Trading Commission (the "Billing Information"). In further support of its application, the Receiver states as follows:

## BACKGROUND

### A. RECEIVER'S APPOINTMENT

On September 27, 2012, the Court appointed Robb Evans & Associates LLC as receiver over the "Defendants and their affiliates and subsidiaries, and of all the funds, properties, premises, accounts, businesses, partnerships, sole proprietorships and any other kinds of assets directly or indirectly owned, beneficially or otherwise, managed or controlled by the Defendants, whether held in their own names or in the names of others ('Receivership Assets')." (Prel. Inj. [Dkts #22] ¶ 41.) To assist in the performance of the Receiver's duties, the Court authorized the Receiver to choose and employ professionals, including legal counsel. (*Id.* ¶ 42(H).)

---

[2] In March 2019, Hiltz & Zanzig LLC changed its name to Hiltz Zanzig & Heiligman LLC.

**B.** **FINANCIAL STATUS OF RECEIVERSHIP ESTATE**

The Receiver has prepared a detailed accounting (the "Fund Balance Report") of all funds taken into the receivership estate, and expenses incurred by the receivership estate through June 30, 2019, plus its estimate of expenditures through the anticipated close of the receivership. (*See* Ex. A (Fund Balance Report).)  To provide a complete overview of the financial status of the receivership, such expenses include fees and expenses that have been incurred but not yet approved (and therefore not paid).  Through the anticipated close of the case, the Receiver estimates it will have assumed control of funds totaling $30,154,748.04.  From those amounts, the Receiver transferred $9 million to the BVI Liquidators as part of its settlement of the BVI Liquidators' claims to nearly all of the receivership assets.  The Receiver estimates that by the close of the Receivership Estate, the receivership will have incurred total fees and expenses of $8,411,082.59 (including all fees and costs that are pending Court approval), a substantial portion of which were incurred by overseas professionals necessitated by the far-flung scope of Battoo's fraud.  Finally, the Receiver distributed $12,743,665.45 to claimants.

Based on funds in hand, the Receiver is holding sufficient funds to pay all fees and costs requested in this application.

**C.** **PRIOR FEE APPLICATIONS**

The Receiver has previously submitted the following nine omnibus fee applications covering the 63 months from the inception of the receivership through December 31, 2017:

- 1st Fee App. [Dkt. No. 156] (covering approximately 5-month period from September 27, 2012, through February 28, 2013);

- 2nd Fee App. [Dkt. No. 222] (covering 6-month period from March 1, 2013, through July 31, 2013);

- 3rd Fee App. [Dkt.  No. 331] (covering 10-month period from August 1, 2013, through May 31, 2014);

- 4th Fee App. [Dkt. No. 436] (covering the 10-month period from June 1, 2014, through April 30, 2015);

- 5th Fee App. [Dkt. No. 518] (covering approximately 12-month period from May 1, 2015 through May 31, 2016);

- 6th Fee App. [Dkt. No. 552] (covering 4-month period from June 1, 2016 through September 30, 2016);

- 7th Fee App. [Dkt. No. 567] (covering 6-month period from October 1, 2016, through March 31, 2017);

- 8th Fee App. [Dkt. No. 590] (covering 5-month period from April 1, 2017, through July 31, 2017); and

- 9th Fee App. [Dkt. No. 602] (covering 5-month period from August 1, 2017, through December 31, 2017)

The Court has issued several orders addressing professional compensation. On June 25, 2013, the Court granted the Receiver's first fee application. (*See* Order [Dkt. No. 166].) On December 20, 2013, in light of restrictions on overseas counsel from working on a contingent basis, the Court authorized the Receiver to make additional necessary expenditures to carry on the Guernsey litigation. (*See* Order dated 12/20/2013 [Dkt. No. 232]; *see also* Order dated 1/3/2016 [Dkt. No. 495].) On January 3, 2016, the Court approved an interim distribution of 50% of fees and expenses requested in the Receiver's second, third, and fourth fee applications, reserving a decision on the balance sought in those fee applications for a later time. (*See* Order dated 1/3/2016 [Dkt. No. 495].) On December 1, 2016, the Court approved the Receiver's fifth fee application, plus the outstanding balance of out of pocket expenses originally requested in the Receiver's second, third, and fourth fee applications. (*See* Order dated 12/1/2016 [Dkt. No. 534].) On March 15, 2017, the Court approved the Receiver's sixth fee application. (*See* Order dated 3/15/2017 [Dkt. # 556].) On August 9, 2017, the Court approved the Receiver's seventh fee application. (*See* Order dated 8/9/2017 [Dkt. # 582].) On November 15, 2017, the Court approved the Receiver's eighth fee application. (*See* Order dated 11/15/2017 [Dtk. #593].) On

May 22, 2018, the Court approved the Receiver's ninth fee application. (*See* Order dated 5/22/2018 [Dkt. #605].) On September 11, 2018, the Court approved the balance of professional fees outstanding that the Receiver originally sought in its second, third and fourth fee applications. (*See* Order [Dkt. #624].)

Additionally, on January 19, 2016, the Court approved in part the Receiver's proposed claims verification budget authorizing the Receiver to pay hard costs and fees up to budgeted amounts as incurred in connection with the claims process without further motion.

Table 1 below summarizes the status of all fees and expenses previously paid to the Receiver and its current counsel pursuant to the forgoing orders.

**Table 1:**
*Status of Prior Requested Fees and Expenses*

| Professional (Role) | | Robb Evans & Associates LLC (Receiver) | Hiltz & Zanzig LLC (Receiver's Domestic Counsel) |
|---|---|---|---|
| **Fees** | Requested | $2,680,264.55 | $189,523.26 |
| | Approved/Paid | $2,680,264.55 | $189,523.26 |
| | Pending | $0.00 | $0.00 |
| **Expenses** | Requested | $82,809.38 | $426.42 |
| | Approved/Paid | $82,809.38 | $426.42 |
| | Pending | $0.00 | $0.00 |

**D.     Status of Claims Processing and Distribution.**

Following the conclusion of its claims processing, the Receiver identified 1,100 claims, with some investors having multiple claims as a result of separate efforts by institutional investors like Acadia and the Maven Liquidators to verify claim on some investor's behalf. Following its extensive efforts to verify claims, the Receiver sought approval of total claims in

the amount of $165,754,443.69.  On December 27, 2018, the Court entered its order approving

the Receiver's Plan of Distribution, and Treatment of Claims.  (Order [Dkt. #647].)  During the

last week of February 2019, the Receiver began paying claimants their pro-rata share of net

receivership assets.  The Receiver ultimately distributed $12,743,665.45 to claimants providing

an approximate recovery of 7.7% relative to approved claims.

## APPLICATION FOR FEES AND EXPENSES

In seeking approval of professional fees and expenses, the Receiver makes a *prima facie*

case in support of the requested fees by preparing an application from which the amount of its

fees and expenses are readily and reasonably ascertained.  *See FTC v. Capital Acquisitions &*

*Mgmt. Corp.*, No. 04 C 7781, 2005 U.S. Dist. LEXIS 18504, *11-12 (N.D. Ill. Aug. 26, 2005).

Provided that the Receiver submits sufficient detail to establish such a *prima facie* case, the fees

shall be deemed presumptively reasonable.  *Id.* (*citing In re Hunt's Health Care,* 161 B.R. 971

(Bankr. N.D. Ind. 1993)).  A party opposing a fee application "must carry the burden of

explaining what therein is unreasonable."  *See Capital Acquisitions*, 2005 U.S. Dist. LEXIS

18504 at *12 (citing *In re Blackwood Assoc., L.P.*, 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994).)

"A party objecting to a fee application may not do so based on the general proposition that the

fee sought is simply too much."  *Hunt's Health Care*, 161 B.R. at 982; *see also In re Continental*

*Ill. Sec. Litigation*, 962 F.2d 566, 570 (7th Cir. 1992) (reversing reduction of attorney fees based

only on "*gestalt reaction*" that fees were too high).  Instead, "the objector must, at some point,

identify any allegedly improper, insufficient, or excessive entries and direct the court's attention

to them."  *Id.*  Moreover, while the awarding of fees to a receiver rests in the Court's discretion,

in receiverships created at the request of a federal agency, the Court should afford "great weight"

to the agency regarding the award of fees to the receiver and its counsel.  *SEC v. First Sec. Co.*,

528 F.2d 449, 451 (7th Cir. Ill. 1976) (citing *S.E.C. v. Fifth Avenue Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).); *SEC v. Custable,* No. 94 C 3755, 1995 U.S. Dist. LEXIS 3279, at \*20 (N.D. Ill. March 15, 1995) ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weights.").

## I.   RECEIVER'S FEES AND EXPENSES

As detailed below, for the Tenth Interim Period, *i.e.* January 1, 2018, through June 30, 2019, the Receiver seeks approval of fees of $160,535.10 and costs of $22,345.32.

### A.   Summary of Principal Activities.

As prescribed by the CFTC's Billing Instructions, the Receiver has tracked the services provided by its personnel through 15 different activity categories.[3]  During the Tenth Interim Period, the Receiver's personnel recorded time in five of those activities: (a) Asset Analysis and Recovery; (b) Case Administration; (c) Claims Administration; (d) Accounting & Auditing; (e) Joint Official Liquidators; and (f) Tax and Corporate Finance Issues.  Table 2 below summarizes, by activity category, the Receiver's personnel who provided services on behalf of the Receiver during the Final Period, their respective billing rate, and the number of hours each worked:

**Table 2:**
Summary of Services Performed by Individual and Activity: *Final Period – January 1, 2018 to June 30, 2019.*

| Professional | Rate | Asset Rec. | Case Adm. | Claims Admin. | Acct. & Audit. | JOL | Tax & Fin. | Total Time | Total Fees |
|---|---|---|---|---|---|---|---|---|---|
| Brick Kane | $301.50 | .9 | 11.9 | 13.9 | 0 | 1.5 | 0 | 28.2 | $8,502.30 |
| Anita Jen | $301.50 | 0 | 5.9 | 7.5 | 3.8 | 0 | .5 | 17.7 | $5,336.55 |
| Flora Jen | $301.50 | 0 | .6 | 456.7 | 7.2 | 0 | 0 | 464.5 | $140,046.75 |

---

[3] The fifteen activity categories are: (1) Asset Analysis and Recovery; (2) Asset Disposition; (3) Business Operations; (4) Case Administration; (5) Claims Administration and Objections; (6) Employee Benefits/ Pension; (7) Accounting/Auditing; (8) Business Analysis; (9) Corporate Finance; (10) Status Reports; (11) Litigation Consulting; (12) Forensic Accounting; (13) Tax Issues; (14) Valuation; (15) Joint Liquidation.

| Professional | Rate | Asset Rec. | Case Adm. | Claims Admin. | Acct. & Audit. | JOL | Tax & Fin. | Total Time | Total Fees |
|---|---|---|---|---|---|---|---|---|---|
| H. Jen | $135 | 0 | 0 | 26.7 | 0 | 0 | 0 | 26.7 | $3,604.50 |
| C. DeCius | $90 | 0 | 0 | 1.8 | 21.1 | 0 | 0 | 22.9 | $2,061.00 |
| Support Staff | $30 | 0 | 0 | 32.8 | 0 | 0 | 0 | 32.8 | $984.00 |
| | TOTAL: | .9 | 18.4 | 539.4 | 32.1 | 1.5 | .5 | 592.8 | $160,535.10 |

Below, the Receiver summarizes the work performed during the Final Period for each category for which it seeks approval:

Asset Analysis and Recovery

In connecting with the wind-down of the Hong Kong proceedings the Receiver investigated and prepared demands to turnover residual balances in any remaining bank accounts. During the Tenth Interim Period the Receiver spent .9 hours on such activities and requests approval of the corresponding $271.35 in fees.

Accounting/Auditing

During the Tenth Interim Period, the Receiver performed necessary and customary accounting operations, including reviewing and recording vendor invoices, processing payables, reconciling bank statements, reviewing related matters, and otherwise maintaining accounting records. The Receiver also compiled financial information used to inform the Court and parties on the status of receivership estate assets. The Receiver devoted a total of 32.1 hours to accounting/auditing activities during the Tenth Interim Period for which it seeks approval of $5,215.50 in corresponding fees.

Case Administration

During the Tenth Interim Period, activities billed to case administration by the Receiver include time spent coordinating with overseas counsel to conclud proceedings in Guernsey and Hong Kong. The Receiver also devoted time to effectuating the terms of its settlement with the

BVI Liquidators. Further, the Receiver remained apprised of developments in this matter by, among other things, reviewing and analyzing relevant pleadings and coordinating with counsel to prepare appropriate responses. The Receiver devoted 18.4 hours to case administration activities and seeks approval of the corresponding $5,547.60 in fees.

Claims Administration

During the Tenth Interim Period, the Receiver continued to coordinate with investors and their representatives regarding the status of their claims, including conducting appropriate research into their inquiries. Among other investors, the Receiver assisted its counsel in responding to various inquiries by Texas counsel representing a class of claimants. The Receiver also worked with the Maven Liquidator to verify investor claims arising from investments funneled through Maven-related entities. The Receiver also reviewed and assisted its counsel in responding to correspondence from Alliance Investment Management relating to the status of claims in the BVI Liquidation.

Most significantly, during the Tenth Interim Period, the Receiver finalized all claims amounts and prepared its proposed plan of distributions. In addition to addressing specific investor inquiries triggered by the proposed plan, the Receiver worked extensively with its counsel in both finalizing the distribution procedures and proposed plan. Once the Court approved notice procedures, the Receiver then implemented them by preparing and distributing notices to claimants with instructions for verifying their final approved claim and instructions for raising objections, if any. Once notice was provided, the Receiver also devoted substantial time

to resolving both formal and informal objections to claim amounts and terms of the plan, including responding to still further investor inquiries.

Finally, after objections were resolved and the proposed plan, as amended, was approved, the Receiver went about the further process of effectuating the distribution of claims both domestically and internationally. Such activities required responding to new investor inquiries prompted by the approval of the plan, and coordinating with bank personnel to implement electronic distributions or payment by cashier's check as appropriate to particular claimants.

During the Tenth Interim Period, the Receiver devoted a total of 539.40 hours to claims administration, incurring corresponding fees of $148.897.65 for which it now seeks approval.

Joint Liquidators

During the Tenth Interim Period, the Receiver continued to coordinate its activities with the Joint Official Liquidators ("JOLs") appointed by the Chief Justice of the Bahamas Supreme Court over the BC Capital Group S.A. and BC Capital Group International S.A, including coordinating with them regarding the wind-down of the liquidation pending there. The Receiver devoted 1.5 hours to such coordination during the Tenth Interim Period and it seeks approval of $452.25 in corresponding fees.

Tax and Corporate Finance

Finally, during the Tenth Interim Period, the Receiver also reviewed and finalized receivership tax returns and coordinated funds transfers between bank accounts devoting .5 hours to such activities and now seeks $150.75 in fees. (The Receiver employs an outside vendor to prepare such returns and such costs are sought in this application as part of receivership expenses.)

**B.     Detailed Description of Activities**

The Receiver has maintained detailed records of the billable time its personnel have devoted to this matter and for which it is now seeking authority to pay.  Attached as Exhibit B to this application are comprehensive monthly invoices for January 2018 through June 2019 setting forth the specific tasks performed, and the time spent performing those tasks by the Receiver's timekeepers.  Such invoices have been prepared consistent with the CFTC's Billing Instructions.

**C.     Expenses**

For the Tenth Interim Period, the Receiver also seeks its incurred costs totaling $22,345.2, including $14,560.08 in bank fees principally associated with effecting the distribution to claimants, $3,954.70 for tax return preparation, $2,108.28 in investigative search costs, $541.20 for website support, $1,110.19 in postage and delivery charges.  *See* Ex. A (Fund Balance Report) at 17.)  Such expenses reflect the actual costs to the Receiver charged by third parties without any mark-up interposed by the Receiver.

---

In sum, for the 18-month Tenth Interim Period, the Receiver's personnel devoted 592.80 hours working on behalf of the receivership estate.  The Receiver seeks approval of corresponding fees totaling $160,535.10.  Such fees corresponded to an effective blended billing rate of approximately $270.80 per hour.  Such hourly rates are the ordinary rates the Receiver charges for similar matters and have been repeatedly approved as reasonable by courts.  The Receiver also seeks out-of-pocket expenses of $22,345.32.  The Receiver has submitted detailed records reflecting the specific work performed evidencing that such work was a necessary part of administering the various facets of this receivership.  Accordingly, the Court should approve such fees and expenses as reasonable and necessary.

II.     LEGAL FEES AND EXPENSES

   A.     **Hiltz Zanzig & Heiligman LLC**

During the Tenth Interim Period, Hiltz Zanzig and Heiligman LLC ("HZH") served as the Receiver's principal domestic legal counsel representing the Receiver in this proceeding as well as coordinating as necessary with the parties and Receiver's counsel abroad. HZH maintained detailed records of the billable time for which the Receiver now seeks authority to pay. Attached as Exhibit C are invoices prepared by HZH setting forth the specific tasks performed, and the time spent performing those tasks by HZH's timekeepers. Below, the Receiver seeks approval of fees and expenses totaling $85,007.04 for the Tenth Interim Period. HZ's services to the receivership estate, during the Tenth Interim Period to include the following:

- Effectuated settlement agreement with BVI Liquidators, including preparing and finalizing stipulations withdrawing parties' respective claims in corresponding proceedings.

- Drafted and prosecuted motions to approve notice procedures for proposed distribution plan.

- Worked closely with Receiver's personnel to prepare and prosecute Receiver's proposed plan of distribution and motion to approve claim amounts.

- Conducted negotiations with Maven Liquidator regarding treatment of investors who submitted claims based on investments that flowed through Maven entities.

- Investigated and responded to concerns raised by Texas counsel regarding treatment of class of claimants.

- Investigated and responded to various objections to proposed plan of distribution and treatment of claims, including working with Receiver's personnel to reconstruct evidence regarding such claims.

- Conferred with and advised Receiver regarding miscellaneous matters relating to administration of estate, including requests for additional information relating to claims.

- Conducted negotiations with Reed Smith regarding turnover of remaining amounts held in client trust account.

- Appeared on behalf of the Receiver at status hearings before the Court.

Table 3 below summarizes the HZ personnel who provided services to the receivership estate during the Tenth Interim Period, their respective billing rate, and the number of hours each worked.

**Table 3:**
Summary of Hiltz Zanzig & Heiligman LLC Services Performed, by Individual.
*Final Period – January 1, 2018 through June 30, 2019*

| Professional | Rate | Total Hours | Total Fees |
|---|---|---|---|
| Blair R. Zanzig | $430 | 198.30 | $85,269.00 |
| John F. Hiltz | $430 | 1.3 | $559.00 |
| Reed A. Heiligman | $430 | 1.1 | $473.00 |
| Alex J. Whitt | $275 | 28.0 | $7,700.00 |
| **Subtotal** | | | **$94,001.00** |
| **Less Discount** | | | **-$9,400.10** |
| **TOTAL** | | **228.7** | **$84,600.90** |

As reflected in Table 3 and in the attached invoices, over the course of the 18-month Tenth Interim Period, HZH collectively billed 228.7 hours representing the Receiver. Applying a 10% discount recognizing the public interest, HZ seeks corresponding fees totaling $84,600.90 (an effective billing rate, including all discounts, of approximately $369 per hour). Additionally, HZH incurred out of pocket expenses of $431.57 for copying and binding costs of various pleadings and postage.

HZH's fees are the ordinary rates HZH charges for similar matters and, in the Receiver's experience, are below market rates in this District charged by attorneys of similar experience and skill. Likewise, in its attached invoices (Exhibit C), HZH detailed the work it performed during the Tenth Interim Period reflecting that such work was necessary considering the needs of this

case and performed without unnecessary duplication of effort.  Accordingly, the Receiver requests the Court approve such fees and expenses.

## III.   ESTIMATE TO CLOSE

Finally, the Receiver requests authority to pay reasonable and necessary fees and costs incurred by the Receiver, its counsel, and other professionals from July 1, 2019 through the close of the case up to $76,000.  In estimating the fees and costs from July 1, 2019 through close, the Receiver has made the following approximate allocations:  (i) $27,500 for Receiver's fees; (ii) $10,000 for Receiver's costs (most of which are on account tax preparation costs charged by outside vendor); (iii) $18,000 for Receiver's legal fees and costs; and (iv) $20,000 total for the fees and costs of PricewaterhouseCoopers Advisory (Bahamas), Ltd. in its capacity as JOL and its counsel Delaney Partners incurred in connection with the wind-down of the Bahamian liquidation proceedings.

The Receiver anticipates that the work performed since July 1 has and will include the following:  Preparing the closing motion and implementing its terms, assisting foreign counsel in closing the liquidation proceeding pending in the Bahamas, continuing to respond to miscellaneous inquires related to the receivership including by claimants and others such as the Maven Liquidator, closing receivership accounts and finalizing receivership accounting, coordinating preparation of final tax returns, and appearances in Court as necessary.  Authorizing the Receiver to pay the associated fees and costs estimated to close the receivership up to the foregoing estimated amounts rather than requiring still further fee applications promotes efficiency and brings finality to the receivership estate.[4]

---

[4] As part of its closing motion filed concurrently with this motion, the Receiver requests authority to then turnover the balance of the receivership estate, including any unearned fees to the Plaintiff CFTC.

**WHEREFORE**, Robb Evans & Associates LLC as Receiver respectfully requests that

the Court enter an order:

(a) approving fees of $160,535.10 incurred by Robb Evans & Associates during the Tenth Interim Period for actual and necessary professional services, plus reimbursement of out-of-pocket costs of $22,345.32;

(b) approving the fees and costs of $85,007.04 incurred by Hiltz Zanzig & Heiligman LLC during the Tenth Interim Period for actual and necessary professional services, plus reimbursement of out-of-pocket costs;

(c) authorizing the Receiver to pay all reasonable and necessary fees and expenses incurred by its professionals and attorneys from July 1, 2019 through the close of the receivership estate up to $76,000;

(d) authorizing and directing the Receiver to immediately pay all approved amounts from Receivership Assets; and

(e) granting such other relief to the Receiver as this Court may deem just and proper.

Dated: August 30, 2019                    Respectfully Submitted,

                                          **ROBB EVANS & ASSOCIATES LLC,**
                                          **RECEIVER**

                                          By: /s/ Blair R. Zanzig
                                                   (One of Its Attorneys)

                                          Blair R. Zanzig (No. 6273293)
                                          **HILTZ ZANZIG & HEILIGMAN LLC**
                                          53 West Jackson Blvd., Suite 701
                                          Chicago, Illinois 60604
                                          Telephone: 312.566.9008
                                          bzanzig@hzhlaw.com

                                          *Counsel for Robb Evans & Associates LLC in its*
                                          *capacity as Receiver*

## CERTIFICATE OF SERVICE

I, Blair R. Zanzig, an attorney, hereby certify that, on the 30th day of August 2019, I caused a true and correct copy of the foregoing **Receiver's Tenth and Final Fee Application** to be served through the Court's Electronic Case Filing System on the following:

AUSA – Chicago, usailn.ecfausa@usdoj.gov
Amanda Leigh Burks, hayesdj@sec.gov, sikoraj@sec.gov, mitchelljd@sec.gov
Carlin R. Metzger, cmetzger@cftc.gov, nhooper@cftc.gov

*Attorneys for the United States Commodity Futures Trading Commission*

Alexander S. Lorenzo, alexander.lorenzo@alston.com
Anthony George Stamato, anthony.stamato@heitman.com
Emily L Seymore, emilyseymore@paulhastings.com, toyagarcia@paulhastings.com
William S. Sugden, will.sugden@alston.com

*Attorneys for Hadley J. Chilton and John J. Greenwood, in their capacity as Joint Liquidators*

Michael F. Cockson, jane.thompson@faegrebd.com, michael.cockson@faegrebd.com
Trina K Taylor, trina.taylor@faegrebd.com, faegrebddocket@faegrebd.com,
colleen.russell@faegrebd.com

*Attorneys for Whitebox Concentrated Convertible Arbitrage Fund, Ltd.*

James Arthur McGurk, james@jamesmcgurklaw.com

*Attorney for Collette Guerra*

Gary Owen Caris, gcaris@btlaw.com

*Attorney for Receiver Robb Evans & Associates LLC*

/s/ Blair R. Zanzig